**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 13-cv-2747-WJM-KMT

KEIFER JOHNSON,

      Plaintiff,

v.

WESTERN STATE COLORADO UNIVERSITY,
BRAD BACA, in his official capacity as president of Western State Colorado University,
GARY PIERSON, in his official capacity as Vice President Student Affairs & Dean of
Students, and
SARA PHILLIPS, individually, and in her official capacity as Title IX Coordinator,

      Defendants.

---

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

---

      Plaintiff Keifer Johnson brings this action against Western State University and

some of its employees under 42 U.S.C. § 1983, alleging that disciplinary proceedings

brought against him violate his due process rights.  (ECF No. 1.)  Before the Court is

Plaintiff's Motion for Preliminary Injunction ("Motion").  (ECF No. 2.)  For the reasons set

forth below, the Motion is DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

      For purposes of the instant Motion, the Court accepts the facts pled in the

Plaintiff's Complaint as true.  The facts necessary to resolve the Motion are set forth

below.

      Plaintiff Keifer Johnson is a student at Western State University (the

"University").  During the 2012-13 school year, he was a teaching assistant for English

102.  (Compl. (ECF No. 1) ¶ 12.)  Onna Gould was a student in that class.  (*Id*. ¶ 14.)

In mid-May 2013, Plaintiff and Ms. Gould began a sexual relationship.  (*Id*. ¶ 16.)

 The relationship was heavily influenced by a book each had read entitled "Fifty

Shades of Grey" and, based on their interest in this book, they engaged in role play,

bondage, and "light sado-masochism".  (*Id*. ¶¶ 27-29.)  In June 2013, Plaintiff sent Ms.

Gould a letter that included graphic references to sado-masochistic sexual acts that he

would like to perform with Ms. Gould (the "June Letter").  (ECF No. 42-2 at 11-21.)

Plaintiff ended the relationship with Ms. Gould in late July 2013.  (Compl. ¶ 38.)

 On August 17, 2013, Plaintiff was informed that he would not be able to continue

as a teaching assistant for the fall semester.  (*Id*. ¶ 41; *see also* ECF No. 42-2 at 7.)

Plaintiff was directed to contact the University's Student Affairs Office if he had any

questions as to why this decision had been made.  (*Id*.)

 On August 20, 2013, Plaintiff went to see Gary Pierson, Vice President of

Student Affairs and Dean of Students for the University.  (Compl. ¶ 43.)  Mr. Pierson

interviewed Plaintiff about his relationship with Ms. Gould, including the June Letter.

(*Id*.)  Mr. Pierson explained the University's policies concerning student conduct, as well

as its obligations under Title IX of the Education Amendments of 1972, 20 U.S.C. §

1681.  (*Id*. ¶ 47.)

 Over the next few days, Plaintiff's parents, Kathy and Keith Johnson, had

conversations with Mr. Pierson and Chris Luekenga, the University's Associate Vice

President for Student Affairs.  (Compl. ¶¶ 49-51.)  University officials suggested that the

complaint received had not come directly from Ms. Gould, and suggested that it may

have come from her mother.  (*Id*. ¶ 49.)  Mr. Pierson informed the Johnsons that he believed this incident would result in counseling for Plaintiff.  (*Id*. ¶ 51.)

On Friday, August 23, 2013, Plaintiff went to the University cafeteria and, in the presence of a food service worker, removed Ms. Gould's expired student identification card from his wallet.  (Compl. ¶ 52.)  Ms. Gould's card was confiscated, and the incident was reported to the University by the cafeteria operator.  (*Id*.)

The following day, Plaintiff was seen entering into a University dormitory through a basement window.  (Compl. ¶ 53.)  This incident was reported to the University by the resident assistant.  (*Id*.)

On Monday, August 26, 2013, Mr. Luekenga sent Plaintiff a letter notifying him that a disciplinary hearing would be held on August 28, 2013 for three violations of the Student Code: (1) inappropriate behavior towards another student; (2) inappropriate behavior towards Sodexo Staff; and (3) use and possession of another student's card (the "First Disciplinary Proceeding").  (*Id*. ¶¶ 55-56; ECF No. 42-2 at 27.)  Plaintiff understood this letter to be addressing his behavior towards Ms. Gould, the meal card incident, and the dorm incident.  (Pl.'s Aff. ¶ 5.)

On the advice of his track coach, Plaintiff went to speak with Mr. Luekenga on the afternoon of August 26, 2013.  (Pl.'s Aff. ¶ 8.)  Mr. Luekenga informed Plaintiff that the University had received a complaint from an outside party regarding his relationship with Ms. Gould.  (*Id*.)  Plaintiff described his relationship with Ms. Gould in detail, stating that they had a consensual, fantasy-based relationship.  (*Id*.)  Plaintiff specifically addressed the June Letter, saying that it was intended to keep a spark in a stressed

relationship.  (*Id*.; ECF No. 42-2 at 31.)  Mr. Luekenga advised Plaintiff that his main

concern was Plaintiff's ability to make wise decisions, and that he would be making a

decision on discipline shortly.  (ECF No. 42-2 at 31.)  Mr. Luekenga advised Plaintiff

that there was no ongoing Title IX investigation, and that their meeting would serve as

Plaintiff's disciplinary hearing.  (*Id*.)

Later that day, Plaintiff sent an e-mail to his parents recounting his meeting with

Mr. Luekenga.  (ECF No. 42-2 at 31-32.)  Plaintiff explained that he and Mr. Luekenga

had discussed the cafeteria incident, the dorm incident, and his relationship with Ms.

Gould, with particular emphasis on the June Letter.  (*Id*.)

On August 28, 2013, Plaintiff received a letter from Mr. Luekenga following up on

their meeting.  (ECF No. 42-2 at 34.)  Plaintiff was found responsible for violating

policies in the Student Handbook and was sanctioned with completion of 48 hours of

community service, writing a letter of apology to the dining staff, attending four

counseling sessions, and placement on probation for one year.  (*Id*.)

On August 29, 2013, the University received a complaint from Ms. Gould.  (ECF

No. 2-3.)  Ms. Gould's complaint describes her relationship with Plaintiff, and alleges

that Plaintiff frightened and intimidated her.  (*Id*.)  The complaint also alleges that

Plaintiff forced himself on Ms. Gould sexually at least once.  (*Id*.)

On August 30, 2013, Plaintiff received a letter from Sarah Phillips, the

University's Title IX coordinator, informing him that the University had been learned of

alleged sexual misconduct initiated by Plaintiff and directed towards Ms. Gould (the

"Second Disciplinary Proceeding").  (ECF No. 42-2 at 38.)  Plaintiff was informed that

he was required to meet with Ms. Phillips on September 3, 2013 to discuss the complaint, as well as the University's processes for investigating the complaint.  (*Id*.) Plaintiff assumed that this meeting was a follow-up to the First Disciplinary Proceeding, specifically regarding the June Letter.  (Pl.'s Aff. ¶ 11.)

Plaintiff met with Ms. Phillips on September 3, 2013.  (Pl.'s Aff. ¶ 12.)  Ms. Phillips informed Plaintiff that Ms. Gould had filed a complaint, and Plaintiff again explained the nature of his relationship with Ms. Gould.  (*Id*.)  Ms. Phillips explained that this was a new complaint, and was not related to the First Disciplinary Proceeding.  (*Id*.) Plaintiff felt blind-sided by this turn of events.  (*Id*.)

On September 5, 2013, Plaintiff received a letter from Edward Klein, the University's Title IX Deputy, informing him that a meeting had been scheduled for September 10, 2013.  (Compl. ¶ 68.)  The letter explained that the meeting was not a disciplinary hearing, but was "essentially an opportunity for us to do some fact finding surrounding the complaint."  (*Id*.)

Plaintiff appeared, with his attorney, at the September 10, 2013 meeting. (Compl. ¶ 71.)  Plaintiff was presented with a copy of Ms. Gould's complaint.  (*Id*.)  After reviewing the complaint, Plaintiff's counsel advised him not to answer any questions or make any comments.  (*Id*. ¶ 72.)

On October 8, 2013, Plaintiff commenced this action by filing a Complaint alleging the disciplinary proceedings brought against him violated his Due Process rights, and breached the Student Handbook.  (ECF No. 1.)  Contemporaneous with his Complaint, Plaintiff filed the instant Motion for Preliminary Injunction asking the Court to

enjoin the University from further disciplinary proceedings, under with the Student

Handbook or Title IX.  (ECF No. 2.)

On the allegations in the Complaint and the Motion, it did not appear that

any further disciplinary proceedings were scheduled against Plaintiff.  The Court

therefore found that the Motion did not allege any immediate harm, and that resolution

of the Motion could wait until the University could be heard.  (ECF No. 10.)  The Court

ordered Plaintiff to immediately serve the University, and directed the University to

respond to the Motion on an expedited basis.  (*Id.*)

On October 16, 2013, Plaintiff received a letter notifying him that the University

had set a disciplinary hearing on Ms. Gould's complaint for October 22, 2013 (the

"Second Disciplinary Proceeding").  (ECF No. 27.)  The letter explained that the matter

to be adjudicated at the hearing was whether, based on the allegations in Ms. Gould's

complaint, Plaintiff had violated the University's policy regarding sexual harassment.

(*Id.*)  The letter stated that the hearing was "an opportunity to explain the situation

through your perspective" and that Plaintiff would be able to present a written

statement, call witnesses or submit written witness statements, and submit pertinent

records or exhibits.  (*Id.*)  Plaintiff was referred to the Student Handbook regarding his

right to have an advisor present at the hearing, as well as the role that advisor could

play.  (*Id.*)

On October 17, 2013, Plaintiff filed an Emergency *Ex Parte* Motion for

Temporary Restraining Order ("TRO Motion"), asking the Court to enjoin the hearing

scheduled in the Second Disciplinary Proceeding.  (ECF No. 23.)  The Court set a

hearing on the TRO Motion for October 21, 2013.  (ECF No. 28.)  At the hearing, the

Court heard argument from counsel, and granted the TRO Motion.  (ECF No. 35.)  In a subsequent written Order, the Court found that entry of the Temporary Restraining Order was necessary to preserve the *status quo* until the Court could resolve the Motion for Preliminary Injunction on its merits.  (ECF No. 37.)  The Temporary Restraining Order was extended on Plaintiff's Motion, and is currently set to expire on November 18, 2013.  (ECF No. 44.)

## II.  LEGAL STANDARD

To prevail on a motion for injunctive relief, the movant must establish that four equitable factors weigh in his favor: (1) he is substantially likely to succeed on the merits; (2) he will suffer irreparable injury if the injunction is denied; (3) his threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.  *See Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009).  "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003).

## III.  ANALYSIS

Because the Court finds that Plaintiff has failed to show a likelihood of success on the merits, its analysis will begin and end there.  Plaintiff brings seven causes of action, all of which relate to whether he was deprived of certain rights during the First Disciplinary Proceeding, or will be deprived of rights by the Second Disciplinary Proceeding.  (Compl. pp. 25-31.)  Encompassed in these claims are two separate arguments: (1) whether the Second Disciplinary Proceeding, in and of itself, violates

Due Process; and (2) whether the procedures which will be utilized during the Second Disciplinary Proceeding conform with Due Process.  The Court will address each of these issues in turn below.

**A.      Double Jeopardy / Claim Splitting**

In the Motion, Plaintiff argues that he is likely to succeed on the merits of his Due Process claims because allowing the University to hold the Second Disciplinary Proceeding would subject him to double jeopardy, which is prohibited by the Constitution.  (ECF No. 2 at 19-20.)  At the hearing on the TRO, the Court implored Plaintiff's counsel to cite a case in which Double Jeopardy had been applied to disciplinary proceedings in a school setting.  In his Reply to the Motion, which was filed after the hearing on the TRO, Plaintiff acknowledges that he has "not located legal authority to support application of the Fifth Amendment Double Jeopardy Clause in student disciplinary proceedings", and recognizes that, "as a novel legal theory, seemingly one of first impression, it would be extremely difficult to argue that it has a substantial likelihood of ultimately prevailing on the merits."  (ECF No. 42 at 5-6.)  Plaintiff then proceeds to argue that "the parallel court-created doctrines of claim preclusion and/or issue preclusion provide very substantial support for barring the University from undertaking the second intended proceeding – in the same manner and for the same equitable reasons it was argued that double jeopardy should apply."  (*Id*. at 6.)

The Court views these statements in the Plaintiff's Reply as an abandonment of any argument regarding the applicability of the Double Jeopardy Clause of the Fifth Amendment, at least for purposes of the instant Motion.  As such, the Court need not

address this point any further.  Instead, the Court will focus on the argument first raised in the Plaintiff's Reply brief, *i.e.*, whether some aspect of the judicially-created doctrines of claim preclusion and/or issue preclusion bar the Second Diciplinary Proceeding.

The University first argues that the doctrines of issue and claim preclusion simply do not apply to school disciplinary proceedings because they are not "judicial proceedings".  (ECF No. 45-1 at 2.)  The Court finds the University's arguments on this point compelling, and has significant reservations about whether school disciplinary proceedings are "judicial proceedings".  *See Woodard v. Jefferson Cty.*, 18 F. App'x 706, 713-14 (10th Cir. 2001) (issue preclusion did not apply to the findings of an internal grievance committee because it did not operate in a quasi-judicial capacity and its findings did not have the force of law).  However, in *Matter of Greene*, 302 P.3d 690, 693 (Colo. 2013), the Colorado Supreme Court held that attorney disciplinary proceedings were subject to issue and claim preclusion, and a logical extension of that analysis could bring apply these doctrines to school disciplinary proceedings.  Given this precedent, the Court assumes, without deciding and for purposes of this Order only, that the disciplinary proceedings at issue in this case are subject to the doctrines of issue and claim preclusion.

In Colorado, issue and claim preclusion require four conditions: "finality of the earlier judgment, identity of subject matter, identity of claims, and identity of the parties (or at least those in privity with them)."  *Greene*, 302 P.3d at 693.  Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation on the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.  *See New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001).  On the

9

other hand, issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim.  *Id*.

Here, Plaintiff contends that the University is barred from commencing the second disciplinary proceeding because the University was required to adjudicate all issues related to Plaintiff's relationship with Ms. Gould during the First Disciplinary Proceeding.  (ECF No. 42 at 7.)  This argument does not fall squarely within issue preclusion or claim preclusion; rather, it is an offshoot of these doctrines commonly referred to as "claim splitting", and which "requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit".  *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th Cir. 2002).  The prohibition on claim splitting prevents parties from wasting "scarce judicial resources" and undermining "the efficient and comprehensive disposition of cases" by spreading claims around in multiple lawsuits in other courts or before other judges.  *Id*.

The key issue here is whether the two disciplinary proceedings are so similar that they "should be treated as the same for purposes of a bar to sequential actions against the same party."  *Greene*, 302 P.3d at 693.  Colorado courts have generally ascribed to the "transactional view", which defines a claim "so as to embrace all remedial rights of a plaintiff against a defendant growing out of the relevant transaction or series of connected transactions."  *Id*. at 694 (citing *Argus Real Estate, Inc. v. E-470 Pub. Hwy. Auth.*, 109 P.3d 604, 609 (Colo. 2005)).   A key consideration is whether the

subsequent proceeding will involve "substantially interrelated proof" as the initial

proceeding.  *See People v. Miranda*, 754 P.2d 377, 380 (Colo. 1988).[1]

Whether two actions involve interrelated proof is a determination that must be

done on a case-by-case basis, and the Court must consider the particular facts and

particular nature of the claims at issue.  *Greene*, 302 P.3d at 693.  However, an

"integral" requirement is that the party commencing the discipline was aware of the

additional action that should be joined with the first "at a point in time making

consolidation or joinder a realistic option."  *Id.* at 695.

The University contends that the two disciplinary proceedings arise out of

different events and, therefore, do not have substantially interrelated proof.  (ECF No.

45-1 at 4.)  It also argues that it did not know of the events giving rise to the second

disciplinary proceeding until after the first was complete.  (*Id.* at 5.)  The Court finds that

the record supports both of these arguments.

With regard to the question of interrelated proof, the record shows that the First

Disciplinary Proceeding involved three events: (1) the June Letter from Plaintiff to Ms.

Gould; (2) Plaintiff presenting Ms. Gould's student identification card at a dining facility;

and (3) Plaintiff entering a dorm through a basement window.  (ECF No. 42-2.)  Plaintiff

admits that, during his initial meeting with Mr. Pierson, he was questioned extensively

about the June Letter, and that there was no discussion of non-consensual sexual

---

[1]  The Court recognizes that *Miranda* is a criminal case and that issue and claim preclusion are civil doctrines.  However, in *Greene*, the Colorado Supreme Court relied heavily on criminal precedent and held that there are significant similarities between attorney regulatory proceedings and criminal actions.  Because the Court is assuming that *Greene* can be extended to the student discipline process, it also relies on precedent from criminal cases.

activity or sexual violence.  (Pl.'s Aff. ¶¶ 1-2.)  An e-mail composed by Plaintiff to his parents on the day of his first hearing similarly states the only events discussed were the three listed above.  (*Id*. at 31-32.)  There is no mention of sexual misconduct in any of the documents related to the First Disciplinary Proceeding or affidavits recounting the events which comprise the First Disciplinary Proceeding.[2]

On the other hand, the focus of the Second Disciplinary Proceeding is on "alleged sexual misconduct, which [Plaintiff] initiated and was directed towards Onna Gould," and is based on a complaint filed by Ms. Gould on August 29, 2013.  (ECF Nos. 2-3 & 42-2 at 38.)  In the Second Disciplinary Proceeding, Plaintiff is being investigated for a violation of the prohibition on sexual harassment, which was never discussed during the First Disciplinary Proceeding.  Because the Second Disciplinary Proceeding focuses only on sexual misconduct, and there was no discussion of sexual misconduct during the First Disciplinary Proceeding, the Court finds that the two disciplinary actions do not involve substantially interrelated proof.

Additionally, Plaintiff has produced no reliable evidence showing that the University had knowledge of Ms. Gould's complaints regarding sexual misconduct, specifically sexual assault or violence, before the First Disciplinary Proceeding concluded.  It is undisputed that, on August 28, 2013, Plaintiff received a letter from the University that outlined his sanctions resulting from the First Disciplinary Proceeding.

---

[2]  Plaintiff has also submitted an affidavit from Kathy Johnson, Plaintiff's mother, in which she avers that Plaintiff told her on August 20, 2013 that he was being investigated for "sexual violence".  (ECF No. 42-3 ¶ 4.)  This affidavit is rife with hearsay and contradicts other, more reliable evidence, such as the letters outlining the scope of the disciplinary hearing and the e-mail drafted by Plaintiff to his parents on the day of the hearing in the First Disciplinary Proceeding.  As such, the Court gives little weight to Ms. Johnson's affidavit.

(ECF No. 42-2 at 34-35.)  This letter informed him that he could appeal the University's

determination, and concluded the First Disciplinary Proceeding.  The following day, on

August 29, 2013, the University received Ms. Gould's complaint, which forms the basis

for the Second Disciplinary Action.  Plaintiff has failed to show that the University had

any knowledge of Ms. Gould's complaint at a point in time in which it would have been

possible to consolidate the allegations made therein with the First Disciplinary

Proceeding.  *See Greene*, 302 P.3d at 695.

Because Plaintiff has failed to show that the two disciplinary actions involved

substantially interrelated proof, or that the University had knowledge of the facts

underlying the Second Disciplinary Proceeding during the First Disciplinary Proceeding,

he has failed to show that he is likely to succeed on his claim alleging claim or issue

preclusion through claim splitting.

**B.     Right to Counsel**

Plaintiff also alleges that he is likely to succeed on his Due Process claim

because the procedures that the University intends to employ during the Second

Disciplinary Proceeding deprive him of his right to counsel.[3]  (ECF No. 42 at 8-12.)

Specifically, Plaintiff contends that the University's Student Handbook, which provides

that a student may have advisory counsel present at a disciplinary hearing "[w]ith the

---

[3]  Plaintiff's Motion does not allege any Due Process violation based on a right to counsel.  (ECF No. 2 at 18-19.)  This argument first appears in Plaintiff's Reply Brief.  (ECF No. 42 at 8.)  Generally, an argument raised for the first time in a reply brief is deemed abandoned or waived.  *See Hanh Ho Tran v. Trustees of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("'Issues not raised in opening brief are deemed abandoned or waived.'") (quoting *Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997)).  However, in the interest of justice, and because the Court has permitted the University to file a sur-reply, the Court will consider this argument.

approval of the Judicial Hearing Officer or Title IX Coordinator or Deputy", is "plainly illegal."  (*Id*. at 11-12.)

The parties disagree as to whether Plaintiff has a right to counsel during any disciplinary hearing and, if so, to what extent counsel should be permitted to participate in the hearing.  Plaintiff cites *Coulter v. East Stroudsberg University*, 2010 WL 1816632 (M.D. Pa. May 5, 2010) for the proposition that his attorney should be permitted to question witnesses and advocate on his behalf during the hearing.  (ECF No. 42 at 8-9.) Defendant contends that *Coulter* is an outlier, and that the majority of cases have held that, at most, a student has right to have counsel present to advise him, but that there is no right to have counsel participate directly in a disciplinary hearing.  (ECF No. 45-1 at 6 *(citing Johnson v. Temple Univ.*, 2013 WL 5298484, *10 (E.D. Pa. Sept. 19, 2013) (collecting cases)).)

The Court finds that it need not resolve this dispute because Plaintiff does not ask for his attorney to be able to participate in any disciplinary hearing.  The only argument Plaintiff makes in his Reply Brief is that the Student Handbook, on its face, violates Plaintiff's right to have counsel present in an advisory capacity.  (ECF No. 42 at 11.)  Because Plaintiff does not ask the Court to require the University to allow his counsel to participate in the hearing in anything other than an advisory capacity, the Court need not decide any broader issue.

The Court finds that Plaintiff has not shown that he is likely to succeed on any claim that he is being denied access to an advisory attorney during an upcoming disciplinary hearing.  The record shows that Plaintiff's attorney was able to attend the investigatory meeting, in which Plaintiff was given a copy of Ms. Gould's complaint.

(Compl. ¶¶ 71-72.)  Counsel was able to review Ms. Gould's complaint with Plaintiff, and advised him not to answer any questions regarding the complaint.  (*Id.*)  The University has consistently stated that Plaintiff will be able to have counsel present at the hearing scheduled in the Second Disciplinary Proceeding, and that counsel will be able to advise Plaintiff during this hearing.  (*See* ECF No. 41 ¶ 16.)  Given this representation, and Plaintiff's failure to present any evidence to the contrary, the Court cannot find that the University, based on its Student Handbook or any other policy, intends to take some action that will deprive Plaintiff of any right to counsel.

In sum, Plaintiff has failed to show that he likely to succeed on his claim that the second disciplinary proceeding will violate his Due Process rights because it should have been joined with the first proceeding.  Plaintiff has also failed to show that he is likely to succeed on his claim that any upcoming disciplinary hearing will violate his right to have advisory counsel present.  As such, the Court finds that Plaintiff has failed to meet his burden of showing a likelihood of success on the merits of any of his claims.

## C.   Remaining Factors

The Court declines to address the remaining preliminary injunction elements, as the resolution of them will have no bearing on the outcome. *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 241 F. Supp. 2d 1119, 1123 (D. Colo. 2002) (declining to enter temporary restraining order, even "assum[ing], without deciding, that the plaintiffs have a substantial likelihood of success on the merits," because plaintiffs failed to establish irreparable harm and that the balance of equities was in their favor); *Russell v. Dep't of Air Force*, 915 F. Supp. 1108, 1122 (D. Colo. 1996) ("Having decided that [plaintiff] has

not shown clearly that he has a substantial likelihood of success on the merits, I need

not address the remaining factors."); *see also Winter v. Natural Res. Def. Council, Inc.*,

555 U.S. 7, 23-24 (2008) (plaintiff's failure to meet one requirement for preliminary

injunction required denial of the requested relief); *Sofinet v. INS*, 188 F.3d 703, 707 (7th

Cir. 1999) (noting that if a plaintiff fails to meet the "threshold requirements" of showing

"likelihood of success and irreparable injury," "the court's inquiry is at an end and the

injunction must be denied").

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      Plaintiff's Motion for Preliminary Injunction (ECF No. 2) is DENIED;

2.      The Court's Temporary Restraining Order (ECF Nos. 37 & 44) shall EXPIRE on

its own terms.


Dated this 18th day of November, 2013.

BY THE COURT:


William J. Martinez
United States District Judge